1

```
                  IN THE UNITED STATES BANKRUPTCY COURT

                  FOR THE NORTHERN DISTRICT OF TEXAS

                             DALLAS DIVISION

WATTSTOCK, LLC                        §    CASE NO. 21-31488-sgj11
                                      §    DALLAS, TEXAS
                                      §    AUGUST 30, 2021
     DEBTOR.                          §    9:04 A.M. TO 9:21 A.M.


                       FIRST DAY MOTIONS HEARING

          BEFORE THE HONORABLE HARLIN DEWAYNE HALE,
                 UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

FOR THE DEBTOR:                  THOMAS DANIEL BERGHMAN, ESQ.
                                 MUNSCH HARDT KOPF & HARR, P.C.
                                 500 N. Akard Street
                                 Suite 3800
                                 Dallas, TX  75201
                                 (214) 855-7554

FOR PROFESYONEL PERSONEL         DANIEL K. CRADDOCK, ESQ.
HIZMETLERI TICARET A.S.:         CRADDOCK MASSEY LLP
                                 1250 S. Capital of Texas Hwy.
                                 Building 1, Suite 420
                                 Austin, TX  78746
                                 (512) 485-7920

FOR ALTA POWER LLC:              JOHN B. LAWRENCE, ESQ.
                                 BAKER BOTTS LLP
                                 2001 Ross Avenue
                                 Suite 900
                                 Dallas, TX  75001
                                 (214) 953-6873

FOR THE SUBCHAPTER 5 TRUSTEE:    SCOTT M. SEIDEL, ESQ.
                                 SEIDEL LAW FIRM
                                 6505 West Park Blvd.
                                 Ste. 306
                                 Plano, TX  75093
                                 (214) 234-2500
```

```
 1  APPEARANCES, CONTD:

 2  FOR THE U.S. TRUSTEE:        MEREDITH KIPPES, ESQ.
                                 U.S. DEPARTMENT OF JUSTICE
 3                               1100 Commerce Street
                                 Room 976
 4                               Dallas, Texas 75202
                                 (214) 767-8967
 5
    FOR GENERAL ELECTRIC:        GLEN REISMAN, ESQ.
 6

 7  TRANSCRIPTION SERVICE:       ACORN TRANSCRIPTS, LLC
                                 Nancy B. Gardelli
 8                               3572 Acorn Street
                                 North Port, FL  34286
 9                               (800)750-5747

10

11

12

13

14

15

16

17

18

19

20

21

22

23
         Proceedings recorded by electronic sound recording;
24          transcript produced by transcription service.

25
```

```
 1                         R U L I N G S

 2  ITEM                                                PAGE

 3  Emergency Motion for Entry of Order Authorizing      12
    Payment of Prepetition Employee Wages (10)
 4   -    GRANTED

 5
    Emergency Motion for Entry of Order Authorizing      14
 6  Debtor to Pay Critical Vendor (11)
     -    APPROVED
 7
    Emergency Motion for Authority to Use Cash           11
 8  Collateral and Make Adequate Protection
    Payments (12)
 9   -    GRANTED

10

11  EXHIBITS:                                         Received

12  Debtor's
    Exhibit A   Declaration of Patrick Jenevein          8
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1     DALLAS, TEXAS, MONDAY, AUGUST 30, 2021; 9:04 A.M.

2     THE COURT: Good morning. This is the bankruptcy
3  court in Dallas. I'll take appearances in Wattstock LLC.
4     MR. BERGHMAN: Good morning, Your Honor, Thomas
5  Berghman for the debtor. And on the call also Mr. Patrick
6  Jenevein, who is the chairman of the debtor.
7     THE COURT: Welcome.
8     MR. SEIDEL: Good morning, Your Honor, Scott
9  Seidel, I'm the Subchapter 5 Trustee in this case, Your
10 Honor.
11    THE COURT: Welcome to you.
12    MR. SEIDEL: Thank you, Your Honor.
13    MS. KIPPES: Good morning, Your Honor, Meredith
14 Kippes on behalf of the United States Trustee.
15    THE COURT: Welcome to you.
16    Anyone else wish to make an appearance?
17    MR. CRADDOCK: Your Honor, I'm Dan Craddock, I
18 represent one of the creditors, Profesyonel Personel
19 Hizmetieri Ticaret which we just call ProPer. I don't expect
20 to participate in the hearing, but wanted to make the
21 announcement.
22    THE COURT: We're glad to have you with us.
23    MR. REISMAN: Glen Reisman for General Electric. I
24 also don't expect to participate in the hearing.
25    THE COURT: Well, good morning anyway.

1          MR. REISMAN:  Thank you.

2          MR. LAWRENCE:  And, Your Honor, John Lawrence for

3 another creditor, Alta Power LLC.  I also do not expect to

4 participate.

5          THE COURT:  Good morning to you.

6          MR. LAWRENCE:  Good morning.

7          THE COURT:  Mr. Berghman, let me say that our

8 system is not working down here at the courthouse, but this

9 morning -- I wake up early and this morning I went ahead and

10 I was able to access it from home and prepare for the

11 hearing.  So I'm actually glad I did, because we got down

12 here and we can't pull up things right now.  This is a Judge

13 Jernigan case, but I have read all of your papers.

14          MR. BERGHMAN:  Thank you very much, Your Honor, and

15 to the extent necessary if systems aren't working, I'm happy

16 to share my screen or do whatever else is necessary to make

17 sure the Court sees what needs to be seen.

18          And, Your Honor, the debtor is seeking fairly

19 limited relief on a first day basis, but before I get into

20 the details, I'd like to thank Your Honor for picking up the

21 baton on the first days here, and thank the Court's staff for

22 the accommodation and help getting us here this morning.

23          And as Your Honor had said, you've read the first

24 day papers, but I'd be happy to just give the Court an

25 additional quick run down of the debtor, a little

1 introduction to provide some context for the relief that
2 we're asking for this morning.
3     THE COURT: That'd be nice, thank you.
4     MR. BERGHMAN: Sure. The debtor's business is,
5 it's an energy business and it does something that I didn't
6 even know was done. They source and refurbish General
7 Electric gas turbine generators. And just as a rough sort of
8 estimate, they're about the size of maybe a shipping
9 container, something like that.
10     The debtor works closely with General Electric and
11 sometimes additional investors. And what they do is, they
12 find these power plants. They inspect them, they decide
13 what's necessary to get them moved and up and running and
14 installed on sight for a new buyer.
15     That generally requires that the power plant be
16 disassembled and the turbine itself will go to GE's engine
17 shop and the other parts will be refurbished by either the
18 debtor itself or they'll supervise the process and manage the
19 process for that refurbishment.
20     These types of power plants are flexible, they're
21 useful in all manner of situations. What immediately comes
22 to mind is peak power events, something like a snowpocalypse,
23 something like Haiti where you have a -- you know, we
24 recently had an earthquake. And as of last night, as I'm
25 sure is near and dear to Your Honor's State of Louisiana, the

1  City of New Orleans is without power.  These types of power
2  plants would be useful in such a situation.
3           The bankruptcy case here was a confluence of just a
4  couple of things and the first is the COVID pandemic of
5  course.  The debtor requires travel in order to source and
6  locate power plants to refurbish and with travel bans and
7  limited travel and just the difficulty of traveling generally
8  in the last 18 months that's really made the debtor's
9  business complicated and difficult.
10          The second reason for the filing and sort of a more
11 immediate shock to the system was a TRO in an employment
12 matter down in Harris County where a state court judge saw
13 fit to freeze all of the debtor's assets, including its
14 funds.  The debtor, of course, thought that that relief was
15 inappropriate and probably improper and unlawful, but you
16 know, rather than spend money and see what happens we decided
17 to file a bankruptcy case was the safer alternative.
18          With that, Your Honor, I'd like to move into the
19 first day motions.  As a general matter, the various forms of
20 relief were discussed last week with the U.S. Trustee's
21 Office, with Ms. Kippes, and with Mr. Seidel Sub Chapter 5
22 Trustee.  There's no objections from those quarters and we've
23 gone over the proposed orders with them and we're fine there.
24          Late last night I did receive an e-mail from Mr.
25 Reisman, who is on the call, for GE and just raising various

1  sort of business and project related issues.  Mr. Reisman and
2  I were able to speak briefly by phone this morning and we've
3  got an open dialog on those issues.  But we did establish
4  that GE had no objections to the relief requested this
5  morning and we resolved to touch base later today to work
6  through the various issues that were raised in Mr. Reisman's
7  e-mail and get to work on those.
8           As for evidence, Your Honor, I'd like to offer into
9  evidence Debtor's Exhibit A which is the declaration of
10 Patrick Jenevein.
11          THE COURT:  And I had a chance to look at all these
12 things.  I don't have access to his declaration as you speak,
13 although one of my law clerks thinks he might, can do it.
14      (Pause)
15          THE COURT:  Mr. Berghman, just give us a second, I
16 think we're going to be able to access it.
17      (Pause)
18          THE COURT:  We have it now, in a sort of back
19 doorway, but we have it.
20          MR. BERGHMAN:  Very good, thank you, Your Honor.
21 The debtor would move for the admission of Exhibit A.
22          THE COURT:  A is admitted.
23      (Debtor's Exhibit A received)
24          MR. LAWRENCE:  Your Honor, this is John Lawrence
25 for Alta Power, a creditor.  We'd ask that it be admitted

1 solely for the purposes of the first day motions.

2 THE COURT: That'd be fine, it'll be limited -- for
3 limited purposes.

4 MR. LAWRENCE: Thank you, Your Honor.

5 MR. BERGHMAN: Very good. Your Honor, first let me
6 turn to the cash collateral motion that's at Docket 12, since
7 it's sort of a gateway issue.

8 The debtor doesn't traditionally carry secured
9 debt, but due to the pandemic it did take out a disaster load
10 with the SBA last year, in the amount of $150,000. We have
11 an agreed order on interim cash collateral usage, that was
12 negotiated with the SBA.

13 The proposed cash collateral usage is fairly
14 limited. It covers employee wages for a project manager for
15 the months of August through the end of September. It also
16 covers an allocation for the Subchapter 5 Trustee's fees. It
17 covers debt service to the SBA at the amount of $731 per
18 month and has an earmark of about $25,000 for debtor's
19 counsel's fees.

20 And on that last piece, as I've communicated with
21 Ms. Kippes, that is going to be subject to future motion
22 practice. So this is not to allow payment of any fees or
23 even allow the disbursement of fees to be held in retainer,
24 just provides that if the debtor is able to obtain an order
25 that allows for the payment of a prepetition retainer, then

1  at least the cash collateral piece of that is going to be
2  covered.
3              THE COURT:  And that's the way I read your footnote
4  too in the order.  So that sounds fine.
5              MR. BERGHMAN:  Okay.  Very good.  Otherwise, no
6  party has objected to the use of cash collateral and I worked
7  with Ms. Donna Webb for the SBA to get an agreed order in
8  place that provides for adequate protection to the SBA in the
9  form of replacement liens to the extent of diminution of cash
10 collateral.  And it does provide for a continued debt service
11 as additional adequate protection.
12             We did move for permission under 363(c)(2)(A) and
13 (B), but it's always better and easier to get an agreement.
14 The collateral at issue here is worth well in excess of
15 $150,000 debt.
16             So with that, Your Honor, the debtor would request
17 that the Court approve the motion and enter the interim order
18 and schedule a final hearing.  And I think it might make
19 sense for me to get with Ms. Ellison to schedule a final
20 hearing, but I do understand that the system recently has
21 been kicking back orders that have blanks in them.
22             So what I'd like to do is, you know, if the
23 motion's approved then I'll reach out to Ms. Ellison and get
24 a final -- a date for a final hearing, input that date and
25 then upload the order for Your Honor.

1  THE COURT: All right. For the record, does anyone
2 else wish to be heard on the cash collateral order?
3  MS. KIPPES: Your Honor, Meredith Kippes for the
4 U.S. Trustee. And Mr. Berghman's representations regarding
5 our discussions concerning the cash collateral order are
6 correct.
7  I indicated to him that the U.S. Trustee often
8 looks askance at post-petition retainers, but we wouldn't
9 prejudge anything and we will take that issue up at the time
10 of the employment application. He indicated to me that their
11 employment application would contain arguments and other
12 information that would support the post-petition retainer at
13 the time it is taken up by the Court.
14  THE COURT: Thank you, Ms. Kippes.
15  MS. KIPPES: With that, we're fine with this form
16 of order and budget.
17  THE COURT: Anyone else wish to comment on cash
18 collateral?
19  As I said, I had a chance to look at all of this
20 stuff this morning while drinking my coffee at home, and the
21 only thing that caused me to pause was the employment issue
22 and the footnote I think makes clear that we don't have a
23 cart before the horse situation, that you're intending to go
24 through the application for employment process.
25  So if you would upload the order on cash collateral

1  after you get the date from Ms. Ellison and I'll be the one
2  that signs the order.  She'll route it to me, but it'll be
3  set in front of Judge Jernigan.
4              MR. BERGHMAN:  Excellent, thank you, Your Honor.
5              The next motion is the wages motion at Docket No.
6  10.  The debtor currently has one project that's active and
7  Mr. Donald Brunswick is the project manager for that project.
8  Due to the aforementioned TRO freezing the debtor's funds,
9  the debtor was unable to pay him his prepetition wages for
10 August through petition date.
11             So this motion just simply requests permission to
12 pay his prepetition wages.  It's about $4,314.35 and that's
13 from August 1 to the petition date.  It's pretty routine and
14 standard relief.  Unless the Court has any questions, the
15 debtor would respectfully request that the Court approve that
16 motion.
17             THE COURT:  Anyone have any comment on the
18 prepetition wage motion?
19     (No response)
20             THE COURT:  That one will be granted.
21             MS. KIPPES:  Your Honor, no objection from the U.S.
22 Trustee.
23             THE COURT:  And I didn't mean to step on that, Ms.
24 Kippes, thank you very much.
25             That one will be granted.  If you'll send in an

1 order, I'll sign it upon receipt.

2     MR. BERGHMAN: Thank you, Your Honor.

3     And then last but not least we have the critical
4 vendor motion, that's at Docket No. 11. We filed this motion
5 out of an abundance of caution that the funds at issue are
6 funds provided to the debtor by a contract with GE. And so
7 they may not even really be estate property, but in case
8 there arguably could be, the debtor seeks approval to wire
9 these funds to the subcontractor located in Abu Dhabi.

10     As mentioned in the motion, there's literally no
11 replacement. As Your Honor may be able to tell from the
12 description, it's a pretty unique business and it's very
13 specialized. And so if this contractor were not there to do
14 this work and there really is no replacement, so it's
15 critical that these folks get paid. And there's obviously a
16 significant revenue stream that's attached to that project
17 for the debtor, as well. So I think it really fits the sort
18 of necessity framework for a critical vendor.

19     I also believe this is fairly standard and routine
20 and just again a prophylactic. So unless the Court has any
21 questions on the critical vendor motion the debtor would also
22 request that the Court enter this order.

23     THE COURT: And let me ask you, just looking at the
24 motion this morning, it looked to me like they would have
25 been paid but for a glitch; is that right? Is that correct?

1  MR. BERGHMAN: Your Honor, that's correct. They --
2  the wire account number that was provided to the debtor
3  prepetition was incorrect. And so we wired the funds
4  prepetition. The money came back, I think maybe on the
5  petition date or the day before, and rather than just
6  reinitiate the wire, I thought it prudent to just get a
7  comfort order so that, you know, there wouldn't be any
8  questions about the propriety of making that payment.
9  THE COURT: Okay. Does anyone else wish to be
10  heard on critical vendor?
11  MS. KIPPES: Your Honor, Meredith Kippes for the
12  U.S. Trustee. I appreciate the debtor's prudence in seeking
13  an order from the Court on this, even though it does -- it
14  certainly looks like this might not even be the debtor's
15  money. We have no objection to this motion.
16  THE COURT: Mr. Berghman is a specialist in paying
17  with someone else's money I think, so. This -- I'm glad you
18  said -- made your comment beforehand. I was looking at this
19  today. This really fits the traditional critical vendor
20  situation that you have read about over the years, with a
21  foreign country and very difficult to get this out of anybody
22  else. So I agree with you on that.
23  That motion will be approved. Mr. Berghman, if
24  you'll send in an order, I'll sign it upon receipt.
25  MR. BERGHMAN: Very good, Your Honor. Well, that's

1  really all she wrote for today on that.  I'm happy to answer
2  any questions the Court may have.  But otherwise, again I'd
3  like to thank the Court for the accommodation and the
4  setting.
5        THE COURT:  My pleasure.  If you send in the
6  orders, Tracy will route them to me upon receipt, and we'll
7  get them back to you so you can do the things that you need
8  to do.  And if you'd just plug in the time period on the cash
9  collateral order before you send that one in, setting it in
10 from of Judge Jernigan, we can get them back to you today if
11 you get them over here today.
12       MR. BERGHMAN:  Thank you so much, Your Honor.
13       THE COURT:  Thank you.  You all have a nice
14 morning.  We'll be in recess until 1:30.
15       (WHEREUPON, the proceedings concluded at 9:21 a.m.)
16                       * * * * *
17
18
19
20
21
22
23
24
25

1                      C E R T I F I C A T I O N

2

3       I, Nancy B. Gardelli of Acorn Transcripts, LLC,

4 hereby certify that the foregoing transcript is correct, to

5 the best of my ability, from the official Zoom/telephonic

6 audio/video recording of the proceedings in the above-

7 entitled matter.

8

9

10 /s/ *Nancy B. Gardelli*     Dated: October 2, 2021
Nancy B. Gardelli
11 Acorn Transcripts, LLC

12 Florida Notary Public
My commission expires: June 28, 2023
13

14

15

16

17

18

19

20

21

22

23

24

25