# EXHIBIT 1

## GEPP Lease

**LEASE**

THIS LEASE (hereinafter called the "Lease"), made and entered into as of the **1 s t** day of June, 2018 (the "Effective Date"), by and between G E Packaged Power LP, a Delaware limited partnership having an office and place of business at 16415 Jacintoport Boulevard, Houston, TX 77015, as Landlord (hereinafter called "Landlord") and WattStock LLC, a Texas limited liability company having its principal place of business at Suite 1020, 4925 Greenville Avenue, Dallas, Texas 75206, as Tenant (hereinafter called "Tenant");

## WIT NESSETH :

The parties hereto, for the consideration herein stated, hereby covenant and agree as follows:

### 1. DEMISE; PREMISES:

Landlord does hereby lease and demise to Tenant, and Tenant does hereby lease and take from Landlord, 14,492 square feet of warehouse space in Building G, ("Warehouse Premises"), 18'6" x 202' or 3,757 square feet of outdoor storage space along the side of Building G (as shown in Exhibit D) ("Outdoor Storage Premises"), and 1,820 square feet of office space in Building A2 ("Office Premises"), located at 16415 Jacintoport Boulevard, Houston, Texas (hereinafter called the "Buildings"). Building G contains approximately 20,320 square feet of rentable space. The land on which the Buildings are located ("Land"), including the limited use of all roadways, sidewalks, lighting fixtures and other improvements located upon the Land and in the Buildings, all as more particularly shown on Exhibit A attached hereto (the Land, Buildings and related improvements being herein called the "Site"). The Office Premises is shown on Exhibit A-2 attached. Tenant may not use any portion of the Land for storage or truck or overnight car parking. The Warehouse Premises and Office Premises are together referred to herein as the "Premises." Any property stored in the Outdoor Storage Premises shall be stored at *the* sole risk of Tenant. Landlord shall have no responsibility for loss, theft or damage to Tenant's property.

### 2. USE:

Tenant shall use the Warehouse and Outdoor Storage Premises solely for the staging, storage, disassembly, refurbishment, and reassembly of pre-owned Aeroderivative Gas Turbine Packages and the Office Premises for office purposes only and for no other purposes whatsoever without Landlord's prior written consent, which consent may be withheld in Landlord's sole discretion. Tenant shall not use or occupy, nor permit or suffer the Premises or any part thereof to be used or occupied for any unlawful or illegal business, use or purpose, nor for any business, use or purpose deemed disreputable, nor in any such manner as to constitute a nuisance of any kind, nor for any purpose or in any way in violation of a certificate of occupancy or of any present or future government laws ordinances, requirements, orders, directions, rules or regulations, or of any applicable restrictions or covenants of record, in any way affecting the Building, Land or Premises.

### 3. TERM; POSSESSION:

The term of this Lease shall be for a period of Three (3) years commencing on the Effective Date (the "Commencement Date") and ending on the last day of the

(3rd) anniversary of the Effective Date (the "Initial Term"), unless sooner terminated as may be hereinafter provided under Sections 16 ("Default") or 25 ("Option to Terminate") of this Lease. Landlord shall deliver possession of the Premises to Tenant on the Commencement Date of the Tenn, free and clear of all tenancies and occupancies.

4.    RENT:

4.1    Base Rent.

(a)    The annual base rental ("Warehouse Base Rent") for the Warehouse Premises shall be $6.30 PSF or Ninety-One Thousand Two Hundred Ninety-Nine and 60/ 100 Dollars ($91,299.60), payable in monthly installments of Seven Thousand Six Hundred Eight and 30/ 100 Dollars ($7,608.30) per month.

(b)    The annual base rental ("Office Base Rent"I for the Office Premises shall be $10.00 PSF or Eighteen Thousand-Two Hundred and 00/ 100 Dollars ($18,200.00), payable in monthly installments of One Thousand Five Hundred Sixteen and 00/ 100 Dollars ($1,516.00) per month.

(d    The annual base rental ("Outdoor Space Rent") for the Outdoor Storage Premises shall be $3.00 PSF or Eleven Thousand Two Hundred Seventy-One and 00/ 100 Dollars ($11,271.00), payable in monthly installments of Nine Hundred Thirty-Nine and 25/ 100 Dollars ($939.25) per month.

(d)    The total monthly base rent for the Premises is Ten Thousand Sbcty-Three and 55/ 100 Dollars ($10,063.55) ("Total Base Rent"I•

Total Base Rent shall be paid monthly, in advance, on the first day of each and every calendar month during the Term of this Lease, without notice or demand and without any set-off or deduction whatsoever, except as set forth in this Lease. Should this Lease commence on other than the first day of a calendar month or end on other than the last day of a calendar month, the monthly installment of Total Base Rent for any such partial calendar month shall be prorated and paid in advance. If Landlord is unable to deliver the Premises on the Commencement Date, the Total Base Rent shall start to be due on the date Landlord actually delivers possession of the Premises to Tenant. The Warehouse Base Rent payable under this Lease is intended to be an absolutely net rent and Tenant shall be responsible for all costs and expenses of every kind and nature whatsoever relating to the use, occupancy, maintenance, repair and replacement of the Warehouse Premises, except as set forth hereinafter in this Lease. The Office Base Rent is intended to be gross rent, inclusive of all costs and expenses relating to the use, occupancy, maintenance, repair and replacement of the Office Premises. Office Base Rent shall <u>not</u> include use of Landlord's office supplies, copy, fax and other business machines, and the use of the G E T1 truck line for network connectivity.

C926 ST-3T488-2011   Doc 153-5   Filed 03\5T\55   Entered 03\5T\55 ST:T8:30   Desc

4.2    <u>Warehouse Costs.</u>    Tenant shall also be required to pay a proportionate share of Truces, Insurance, Common Area Maintenance, and Electricity and Gas costs, all as hereinafter defined, for the Warehouse Premises ("WH Costs"). Tenant's proportionate share of WH Costs is Seventy-One and 30/100 Percent (71.30%) of total WH Costs ("Tenant's Proportionate Share"). WH Costs as of the Commencement Date are estimated to be $1.65 PSF which shall be applied to the entire square footage of the Warehouse Premises, payable at a rate of One Thousand Nine Hundred Ninety-Two and 6 5 /



Dollars ($1,992.65) per month. Additional Rent is subject to annual reconciliation and modification based on the actual costs incurred by Landlord for Additional Rent expenses.

(a) **Truces.** Truces are defined as all real estate taxes, assessments, and other governmental charges, general and special, ordinary and extraordinary, unforeseen as well as foreseen, of any kind and nature whatsoever that are assessed, levied, confirmed, imposed or become a lien upon the Warehouse Premises, excluding state and federal income truces.

(b) **Insurance.** Insurance is defined in Paragraph 7.3 of the Lease which includes Landlord's Liability coverage and All Risk coverage for the Warehouse Building.

(c) **Common Area Maintenance Costs.** Common Area Maintenance Costs are defined in Paragraph 8.1 of the Lease.

(d) **Electricity and Gas Costs.** Electricity and Gas Costs are defined as Tenant's Proportionate Share of all Electricity and Gas Costs for services provided to the Warehouse Building.

4.3 **Directly Billed Costs.** In the event Tenant requests certain services from Landlord, Landlord may bill Tenant directly for such services and Tenant shall make payment as required herein ("Direct Billed Services"). Such Direct Billed Services include, but are not limited to the following:

(a) Any repairs or replacements to the Building or Premises required due to damage caused by Tenant;

(b) Any alterations to the Premises requested by Tenant;

(c) Parts and labor for the installation of any equipment;

(d) Janitorial services outside of the normal course; and

(e) Light bulb replacement and special repair requests.

4.4 **Payments to Vendors by Tenant.** Tenant shall make timely payments directly to vendors for the certain services provided to Tenant at the Premises ("Direct Pay Services"). Such Direct Pay Services include, but are not limited to:

(a) Parts and labor for the installation of any equipment;

(b) Crane repairs, replacements, inspections and routine maintenance by a Landlord vendor;

(c) Compliance with environmental, health and safety regulations and requirements, including obtaining any required permits;

(d) Diesel fuel costs;

Exhibit F Green Offices Page 4 of 27
Case 11-31488-sgj11    Doc 1525    Filed 03/15/22    Entered 03/15/22 15:16:38    Desc

(e) Communication and telephone services; and

(f) Removal of domestic, chemical and manufacturing wastes in compliance with all laws with Landlord approved vendors.

4.5 **Security Services Fee.** All employees, contractors and visitors of Tenant shall be required to carry a security badge. Up to five (5) visitor badges will be provided to Tenant free of charge. Each permanent badge shall be provided by landlord to Tenant at a cost of $25.00 per badge. The replacement cost for any lost or stolen badges, including visitor badges, shall be $25.00 per badge.

4.6 **Additional Rent.** All amounts required to be paid by Tenant pursuant to Paragraph 4.2, 4.3 and 4.5 above, and all other payments, costs, charges and expenses to be paid by Tenant or incurred by Landlord on behalf of Tenant pursuant to the terms of

this Lease, shall be considered as additional rent ("Additional Rent"}, and any failure on the part of Tenant to pay such Additional Rent when due shall entitle Landlord to the remedies available to it for non-payment of Base Rent, including, without limitation, late charges and interest thereon.

4.7 <u>Manner of Payment.</u> All Total Base Rent and Additional Rent (herein collectively called "Rent") shall be paid when due to Landlord at its address first above written, unless Landlord shall designate some other payee or address for the payment thereof by giving written notice to that effect to Tenant.

4.8 <u>Late Payments.</u> In the event any installment of Total Base Rent or Additional Rent is not paid within ten (10) days after the date when same is due, Tenant shall pay a penalty in the amount of $250.00 plus interest on the amount past due at a rate of interest of ten percent (10%) per annum of the amount due to defray the additional expenses incurred by Landlord in processing such payment.

4.9 Payment Instructions. Rent may be paid electronically by wire or by check to the following addresses:

<u>Remit To: Wire Instructions</u>
GE Energy Products, Inc
Acct #50-263060
Deutsche Bank
60 Wall Street New York, New York 10005
ABA #021001033
Swift Code: BKTRUS33

<u>Remit To: Mail Instructions</u>
GE Energy Products, Inc
P.O. Box 100371
Atlanta, GA 30384-0371

For either payment method, please reference "Jport WattStock Lease Payment" on your payment.

5. <u>UTILITIES:</u>

To the extent any utility is separately metered for the Warehouse Premises Tenant shall promptly pay when due all costs and charges for such utilities when due. Tenant shall be billed for Tenant's Proportionate Share of water and sewer services, gas, steam, electricity, fuel, light, power, heat, and any other utility or service used or consumed in or servicing the Premises and all other costs and expenses involved in the care management and use thereof to the extent charged by the applicable utility companies. If Tenant fails to pay any utility bills or charges, Landlord may, at its option, upon reasonab written notice to Tenant, pay such bills or charges and in such event, the amount of such payment will be billed to Tenant as Additional Rent. Landlord shall not be liable in damages or otherwise for any failure or interruption of any utility service or other se furnished to the Premises.

1

Case 3T-3T488-zBnJ  Doc 353-5  Filed 03/0T/ss  Entered 03/0T/ss 3T:Te:38  Desc Exhibit J (GE5b T6826)  b906 5 0f 53

6. CONDITION OF PREMISES:

Tenant represents that it has examined the Premises and is satisfied with the condition thereof and agrees to accept the Premises in "as is" condition and subject to all applicable zoning, federal, state and local laws, ordinances and regulations governing and regulating the Premises, including but not limited to the Americans with Disabilities Act, and any covenants and restrictions of record and all matters disclosed thereby and by any exhibits attached to this Lease. Tenant acknowledges that neither Landlord nor any agent of Landlord has made any representation or warranty with respect to the Premises, the Building or the Land, or with respect to the suitability of the same for the conduct of Tenant's business, nor has Landlord agreed to undertake any modification, alteration or improvement to the Premises or Building, except as specifically provided in this Lease.

7. INSURANCE AND INDEMNITY:

7.1. Tenant's Insurance. Tenant, at its sole cost and expense, shall obtain and maintain in effect as long as this Lease remains in effect and during such other time as Tenant occupies the Premises or any part thereof insurance policies providing at least the following coverages:

(a) General liability insurance, in occurrence form, insuring Tenant and including the Landlord as an additional insured against any and all liability for injury to or death of a person or persons, and for damage to or destruction of property, occasioned by or arising out of or in connection with Tenant's use or occupancy of the Premises or the business operated by Tenant thereon, and including contractual liability coverage for Tenant's indemnity obligations under this Lease (other than those contained in Paragraph 27 hereat), to afford protection with a minimum combined single limit of liability of at least Three Million Dollars ($3,000,000) per occurrence. Coverage can be comprised of a combination of primary and excess liability limits; and

(b) To the extent required by law, workers' compensation insurance offering statutory coverage and containing statutory limits and employer's liability insurance in form and amount deemed reasonable by Tenant in the exercise of its prudent business judgment.

Such policies will be maintained in companies having a "General Poli$c_y$ holders Rating" of at least A-, VII as set forth in the most current issue of "Best's Insurance Guide", and will be written as primary policy coverage and not contributing with, or in excess of, coverage which Landlord shall carry. With respect to the insurance described in subparagraph (a) above, Landlord shall be included as an additional insured thereunder. Tenant shall deposit certificates of such required insurance with Landlord prior to the Commencement Date of this Lease, or (y) Tenant's occupancy of the Premises. Tenant hereby agree to notify Landlord at least 30 days in advance of any cancellation or alteration of such policy or policies. Tenant shall have the right to provide the coverage required herein under blanket policies provided that the coverage afforded shall not be diminished by reason thereof.

7.2. Tenant's Property. All furnishings, fixtures, equipment, and property of every kind and description of Tenant and of persons claiming by or through Tenant which may be on the Premises shall be at the sole risk and hamrd of Tenant a n d n p a r t of loss or damage thereto for whatever cause is to be charged to or borne by Landlor

Case 21-31488-2011: Doc 133-5 Filed 01/31/22 Entered 01/31/22 21:16:38 Desc Exhibit (CFHB Lease) Page 6 of 27

7.3.  **Landlord's Insurance.**  Landlord, at its sole cost and expense, shall obtain and maintain in effect as long as this Lease remains in effect insurance policies providing at least the following coverages:

(a)    **General liability insurance,** in occurrence form, insuring Landlord against any and all liability for injury to or death of a person or persons, and for damage to or destruction of property, occasioned by or arising out of or in connection with the ownership or management of the Land and/or Building, and including contractual liability coverage for Landlord's indemnity obligations under this Lease (other than those contained in Paragraph 27 hereat), to afford protection with a minimum combined single limit of liability of at least Three Million Dollars ($3,000,000); and

(b)    To the extent required by law, workers' compensation and similar insurance offering statutory coverage and containing statutory limits and employer's liability insurance in form and amount deemed reasonable by Landlord in the exercise of its prudent business judgment.

7.4.  **Waiver of Recovery.**  Neither Landlord nor Tenant shall be liable to the other or to any insurance company (by way of subrogation or otherwise) insuring the other party for any loss or damage to any structure, building, or other tangible property, or any resulting loss of income, even though such damage or loss might have been occasioned by the negligence of Landlord or Tenant or any of their agents or employees, if any such loss or damage is covered by insurance benefitting the party suffering such loss or damage or was required of such party to be covered by insurance pursuant to this Lease.

8.     **MAINTENANCE AND REPAIRS:**

8.1.  **Landlord's Obligations.**  Landlord shall maintain and repair the Common Areas and the structural parts of the Buildings, which structural parts shall include only the roof, foundation and subflooring, the load-bearing exterior walls, and the plumbing and other utilities located on the Land and Building, at Landlord's sole expense not the be included in the Additional Rent to be paid by Tenant, except for any damage thereto caused by the negligent or intentional acts or omissions of Tenant or Tenant's agents, employees or invitees, or by reason of Tenant's failure to perform or comply with any terms of this Lease, or caused by Alterations (as hereinafter definedl made by Tenant or Tenant's agents, employees or contractors.  Landlord shall not be liable for loss or damage caused by Landlord's failure to maintain or repair the Premises solely as set forth in this Agreement, including any consequential or punitive damages and liability for any interruption of Tenant's business or services when such failure is due to causes beyond Landlord's reasonable control.  Landlord shall maintain the parking lot and entrance road in the same condition as exists as of the Commencement Date.  Notwithstanding the foregoing, in the event any such structural repair requires a major capital investment or outlay by Landlord ("Capital Repair"), in lieu of making such Capital Repair, Landlord may opt to either terminate this Lease on reasonable prior notice to Tenant or allow Tenant to make such Capital Repair at Tenant's sole cost and expense.  Landlord shall be r e q u i r e d * to provide routine janitorial services to the Office Premises in the same manner as provided for the other office space in the Buildings.

8.2.  **Tenant's Obligations.**  Tenant shall at all times and at its own expense clean, keep and maintain in good order, condition and repair every part of the Premises, that is not a Landlord obligation as provided in the first sentence of Section 8.1.  Tenant's

EXHIBIT (GEE-168826) 1806 01 St
C92e ST-3T-N88-20UT     Doc 159'3 OF 1155 SE1A12E2 A E18[6I6q 03\ST\SS T9:30:ST-T8:30   De2e

repair and maintenance obligations shall include, all plumbing and sewage facilities, fixtures, interior walls and ceiling, floors, windows, doors, entrances, plate glass, skylights, all electrical facilities and equipment, including lighting fixtures, lamps, fans, all heating, ventilating and air conditioning systems and equipment, any exhaust equipment and systems, any automatic fire extinguisher equipment within the Premises, electrical motors and all other appliances and equipment of every kind and nature located in, upon or about the Premises. Tenant shall also be responsible for all pest control within the Premises. Tenant shall enter into an HVA C systems preventive maintenance contract and a crane maintenance contract for cranes listed specifically in Exhibit B with vendors reasonably approved by Landlord (the "Cranes"), to the exclusion of all other cranes at the Premises. Tenant may choose to have certain cranes locked out. Those cranes will not be available for Tenant's use and Tenant will have no obligation to maintain any of the locked-out cranes. In the event a locked-out crane is requested to be brought back on line by Tenant, Tenant will pay the cost of bringing the crane back on line and assume full inspection, use, and maintenance of that crane for the duration of the Term in the same manner as those cranes listed on Exhibit B, with services in accordance with manufacturer recommendations, subject to the reasonable approval of Landlord and paid for by Tenant, and which shall provide for and include replacement of filters, oiling and lubricating of machinery, parts replacement, adjustment of drive belts, oil changes and other preventive maintenance, including annual maintenance of duct work, interior unit drains and caulking of sheet metal, and recaulking of jacks and vents on an annual basis.

## 9.  ALTERATIONS:

Tenant shall not make any alterations, additions, installations (of partitioning, trade fixtures, machinery, equipment, furnishings or whatever) or changes (all hereinafter collectively called "Alterations") in and to the Premises without first obtaining Landlord's written consent, which shall not be unreasonably withheld. Upon approving any such Alterations, Landlord shall advise Tenant if such Alterations must be removed at the end of the Term or earlier termination of the Lease. In the event removal is required, Tenant shall repair any damage caused by such removal and restore the Premises to the condition as of the Commencement Date. Landlord shall require Tenant to remove the Tenant's installed C-hooks or grabbers on cranes and reinstall Landlord's equipment prior to the end of the Term. Tenant agrees that any and all such work shall be performed in a good and workmanlike manner and in accordance with all applicable ordinances, laws and regulations.

## 10.  DAMAGE OR DESTRUCTION:

Case 11-31488-sgj11   Doc 1223   Filed 01/31/22   Entered 01/31/22 21:19:36   Desc<br>Exhibit I (CFLP Lease)   Page 8 of 51

In the event of any damage to, or destruction of the Buildings occasioned by fire, flood, tornado or by the elements or otherwise which shall render less than twenty-five (25%) percent of said Premises unfit for use by Tenant for its intended purposes and said Building could be reasonably restored or repaired within ninety (90) days after the date of the occurrence of such damage or destruction, and provided Landlord has received the necessary insurance proceeds from Tenant's property and casualty insurance policy maintained under Paragraph 7.1 (b) above to cover the cost of restoration and repair, Landlord shall promptly make such temporary repairs or do such other work as may be necessary in order to protect the Premises pending the making of permanent repairs, restoration or reconstruction, and Landlord shall commence such reconstruction or repair within thirty (30) days after the occurrence of such damage or destruction and shall use commercially reasonable efforts to substantially complete such restoration or repair within ninety (90) days after such occurrence. Such reconstructed or repaired



Building when so restored shall be of equal utility to the Tenant as existed immediately prior to occurrence of such damage or destruction.

(b)     In the event of any damage to or destruction of said Buildings which shall render twenty-five  percent (25%) or more of said Premises unfit for use by Tenant for its intended purposes, or if said Building could not be reasonably repaired or restored within a period of one hundred twenty (120) days after the date of the occurrence of such damage or destruction, either Landlord or Tenant shall have the right to terminate this Lease by delivering written notice thereof to the other within twenty (20) days after the occurrence of such damage or destruction. Unless this Lease is terminated as herein provided, Landlord shall within thirty (30) days after the occurrence of any such damage or destruction, and provided Landlord has received the necessary insurance proceeds from Tenant's property and casualty insurance policy maintained under Paragraph 7. l(b) above to cover the cost of restoration and repair, begin to reconstruct or repair such Building and shall prosecute such reconstruction or repair diligently so that the same shall be completed in the manner hereinbefore described as soon as reasonably possible after the occurrence of such damage or destruction.

(c)     In the case of termination of this Lease pursuant to the provisions of subparagraph (b) hereof, and provided Tenant ceases to use and occupy the Premises, Tenant shall be required to pay Rent only up to the time of the occurrence of such damage or destruction, and the portion of any Rent paid in advance which covers the period of time subsequent to such occurrence shall be refunded by Landlord to Tenant.

(d)     In the event of any damage or destruction of said Building as aforesaid, all insurance proceeds applicable thereto shall be payable to Landlord.

(e)     Notwithstanding any of the foregoing, Tenant may not terminate this Lease in the event of damage or destruction if Landlord provides Tenant with alternative space within the Building which is of equal utility and adaptable to Tenant's purposes.

11.    **CONDEMNATION:**

(a)     If all or substantially all of the Premises be appropriated for any public or quasi-public use by virtue of eminent domain or condemnation proceedings, then this Lease shall terminate and come to an end on the date of such appropriation or taking.

(b)     If less than a substantial part, but a part large enough so that the Premises are unfit for use by Tenant, is appropriated or taken, Tenant shall have the right to terminate this Lease in other manner hereinafter set forth. The Premises shall be conclusively deemed to be unfit for use by Tenant if more than five percent (5%) of the Premises is taken.  If Tenant so elects to terminate this Lease, it shall give written notice to Landlord within twenty (20) days after the entry of the final order of the court or other authority empowered to authorize the taking or appropriation.

(c)     In the event of any such appropriation or taking and this Lease is not terminated as aforesaid, then each installment of Rent required to be paid hereunder after the date of the vesting of title to the portion or portions so appropriated or taken shall be adjusted, giving effect to the time during which and the portion of the Premises from which Tenant shall be deprived of use and occupancy, and Landlord shall proceed diligently to restore said Premises as closely as possible to its condition immediately prior to the taking, but only to the extent Landlord receives a condemnation award or proceeds.

C926 to terminate this Lease in other manner hereinafter set forth.

4A

(d) In the event of any such talcing or appropriation, all compensation and awards shall belong to Landlord. Landlord reserves all rights to damages paid because of any partial or entire talcing of the Premises. Tenant assigns to Landlord any right Tenant may have to the damages or award. Further, Tenant shall not make claims against Landlord or the condemning authority for damages. Notwithstanding anything else in this subparagraph, Tenant may claim and recover from the condemning authority a separate award for Tenant's moving expenses, business dislocation damages, Tenant's personal property and fixtures, and any other award that would not reduce the award payable to Landlord. Each party shall seek its own award, as limited by this subparagraph, at its own expense, and neither shall have any right to the award made to the other.

(e) Notwithstanding any of the foregoing, Tenant may not tenninate this Lease in the event of condemnation if Landlord provides Tenant with alternative space within the Building which is of equal utility and adaptable to Tenant's purposes.

## 12. SIGNS:

No sign, advertisement or notice shall be inscribed, painted, affixed, or displayed on the windows or exterior walls of the Premises or on any public area of the Building or the Land, except in such places, numbers, sizes, colors and styles as are approved in advance in writing by Landlord, which approval shall not be unreasonably withheld, and which conform to all applicable laws and ordinances. Any and all permitted signs shall be installed, maintained and removed by Tenant, at Tenant's sole expense.

## 13. PARKING:

As further consideration for the rental to be paid by Tenant hereunder, Landlord hereby grants to Tenant the right to use the parking area on the Land in the areas shown on Exhibit A. Tenant shall not park tractor trailer trucks on the Land except for loading and unloading purposes.

## 14. ASSIGNMENT AND SUBLE'ITING:

Tenant covenants that it will not assign, mortgage or encumber this Lease, nor sublet all or any portion of the Premises, nor permit the Premises or any part of the Premises to be used or occupied by others, without the prior written consent of Landlord in each instance, which consent shall not be unreasonably withheld. The transfer of control or of a majority of the issued and outstanding capital stock of any corporate tenant or subtenant or of the general partnership interest in any partnership tenant or subtenant, however accomplished, and whether in a single transaction or in a series of transactions, will be an assignment of this Lease or a subletting which will require Landlord's prior written consent in each instance, which consent shall not be unreasonably withheld.

## 15. SUBORDINATION:

Tenant agrees upon request of Landlord to subordinate this Lease and it rights hereunder to the lien of any mortgage, deed of trust or other voluntary hypothecation arising out of any security instrument duly executed by Landlord charged against th Land, Building and Premises, or any portion or portions thereof, and to execute at any time and from time to time such documents as may be required to effectuate any such subordination provided that the mortgagee or beneficiary named in such mortgage or deed

of trust shall first agree in writing that so long as Tenant is not in default of any of the terms, covenants, or conditions of this Lease, neither this Lease nor any of the rights of Tenant hereunder shall be terminated or modified or be subject to termination or modification by any trustee's sale, any action or proceeding in foreclosure, or any sale in lieu of the foregoing.

16.    DEFAULT:

16.1    If Tenant at any time during the Tenn of this Lease:

(a)    Shall default in the payment of any installment of Rent as and when the same shall be due and payable and such default shall not have been cured within ten (10) days after Landlord shall have given Tenant written notice specifying such default; or

(b)    Shall default in the observance or performance of any of Tenant's other covenants hereunder (other than the covenant to pay Rent) and such default shall not have been cured within thirty (30) days after Landlord shall have given to Tenant written notice specifying such default; provided, however, that if the default complained of shall be of such a nature that the same cannot be completely remedied or cured within such thirty (30) day period, then such default shall not be an enforceable default against Tenant for the purposes of this Paragraph if Tenant shall have commenced curing such default within such thirty (30) day period and shall proceed with reasonable diligence and in good faith to remedy the default complained of; or

(c)    Shall, finally and without further possibility of appeal or review, (i) be adjudicated bankrupt or insolvent, or (ii) have a receiver or trustee appointed for all or substantially all of its business or assets on the ground of Tenant's insolvency, or (iii) suffer an order to be entered approving a petition filed against Tenant seeking reorganization of Tenant under the Federal Bankruptcy Laws or any other applicable law or statute of the United States or any State thereof; or

(d)    Shall make an assignment for the benefit of its creditors, or file a voluntary petition in banlouptcy or a petition or answer seeking reorganization or arrangement under the Federal Bankruptcy Laws or any other applicable law or statute of the United States or any State thereof, or shall file a petition to take advantage of any insolvency act or shall consent to the appointment of a receiver or trustee of all or a substantial part of its business and property;

then, upon the happening of any one or more of such events of default and the expiration of the period of time prescribed in any such notice, Landlord may, without further notice to Tenant and without further demand for Rent due or for the observance or performance of any of said terms, conditions or agreements, terminate this Lease and re-enter said Premises and remove all persons and property therefrom, using such force as may be necessary, and again possess said Premises as its own.  In the event of such Lease termination by Landlord, Tenant will indemnify Landlord against all loss of Rent that Landlord may incur by reason of said termination for the balance of the Tenn of this Lease.  Landlord shall also be entitled to all remedies provided at law or in equity and t o * those remedies specified in Paragraph 17 following.

16.2 Landlord shall be in default under this Lease if Landlord fails to perform any of Landlord's obligations under this Lease and the failure continues for more than thirty (30) days after Landlord's receipt of written notice from Tenant

specifying the default, or if the default is of a nature that cannot be completely cured within the 30-day period, if Landlord fails to begin curing the default within the 30-day period or thereafter fails to diligently proceed to cure the default, affecting Tenant's use and occupancy of the Premises. If Landlord shall fail to cure within the times permitted for cure herein, after a second notice and an opportunity for Landlord to commence to cure the default within 48 hours, Tenant shall, after providing Landlord with a copy of the quote for the cost of the proposed repairs, have the right to perform such repairs per the quote, and if Tenant, in doing so, makes any expenditures or incurs any obligation for the payment of money, the sums so paid or obligations incurred shall be paid by Landlord to Tenant within thirty (30) days of receipt of the final invoice for such repairs.

17.   REMEDIES:

(a)     If Tenant shall default in the observance or performance of any covenants or conditions contained herein and to be performed on Tenant's part, Landlord may, after the applicable notice to Tenant therefor as set forth in Paragraph 16 hereof, or without notice if in Landlord's opinion an emergency exists, perform the same for the account and at the expense of Tenant and Tenant shall promptly reimburse Landlord for any and all reasonable costs and expenses, including reasonable attorneys' fees, thereby incurred by Landlord. If Landlord shall incur any expense, including reasonable attorneys' fees, in instituting, prosecuting or defending any action or proceeding instituted by reason of any default of Tenant, Tenant shall reimburse Landlord for the amount of such expense. The provisions of this subparagraph (a) shall survive the termination of this Lease.

(b)     In the event of any termination of this Lease, whether by expiration, forfeiture, cancellation, surrender or by operation of law or by issuance of a final court order, Landlord may re-enter the Premises and remove therefrom Tenant, its agents, employees, licensees and any sublessees, persons, firms or corporations and all of their respective property, using such force for that purpose as may be necessary without being liable for prosecution or damages therefor, and thereupon Landlord shall be entitled to retain possession of the Premises and all additions, alterations and improvements thereon, fixtures and appurtenances thereto, free from any estate or interest of Tenant therein. Tenant does hereby expressly waive service of any notice of intention to re-enter or enter except as herein otherwise expressly provided.

(c)     In case of any termination, re-entry or dispossess by summary proceedings or otherwise, the Rent shall thereupon become due and payable up to the time of such termination, re-entry or dispossess, and Tenant shall also pay to Landlord all reasonable expenses which Landlord may incur or thereafter incur for legal expenses, attorneys' fees, brokerage commissions and all other costs paid or incurred by Landlord for restoring the Premises to good order and condition and for altering and otherwise preparing the same for reletting; provided that Landlord shall use reasonable commercial efforts to relet the Premises. Landlord, at its option in good faith, may make such alterations and repairs in and to the Premises as in its reasonable judgment Landlord considers advisable and necessary to relet the Premises, and the making of such alterations and repairs shall not operate or be construed to release Tenant from liability hereunder. Tenant hereby waives in favor of Landlord, to the extent permitted by law, any liability to Tenant for failure to relet the Premises and for failure to collect rent under such reletting; provided that Landlord shall use reasonable commercial efforts to relet the Premises and collect rents under such reletting; and in no event shall Tenant be entitled to receive any excess of such annual rents over the sums payable by Tenant to Landlord

Exhibit 1 (CEDJ 73933)  Page 18 of 31

C926 re asonable expenses which Landlord may incur or thereafter

hereunder. Suit or suits for the recovery of such damages, or any installments thereof, may be brought by Landlord from time to time at its election, and nothing herein contained shall be deemed to require Landlord to postpone suit until the date when the Term of this Lease would have expired if it had not been terminated under the provisions of this Lease or under any provision of law, or had Landlord not re-entered into or upon the Premises.

(di The rights and remedies given to Landlord in this Lease are distinct, separate and cumulative, and no one of them, whether or not exercised by Landlord, shall be deemed to be in exclusion of any of the others herein or by law or in equity provided, and nothing herein contained shall limit or prejudice the right of Landlord to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any other statute or rule of law in effect at the time, and governing the proceedings in which such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

18.  EXCULPATION AND INDEMNIFICATION:

(a)  Tenant is and shall be in exclusive control and possession of the Premises, and Landlord shall not in any event whatsoever be liable for any injury or damage to any property or to any person happening on, in or about the Premises nor for any injury or damage to the Premises or any part thereof, nor to any property, whether belonging to Tenant or any other person, caused by any fire, breakage, leakage, defect or bad condition in any part of the Premises, or from steam, gas, electricity, water, rain or snow that may leak into, issue or flow from any part of the said Premises from the drains, pipes or plumbing work of the same, or from street, subsurface or any place of quarter, or due to the use, misuse or abuse of all or any of the elevators, hatches, openings, installations, stairways or hallways of any kind whatsoever which may exist or hereafter be erected or constructed on the Premises or from any kind of injury which may arise from any other cause whatsoever on the said Premises, including defects in construction of the Building, latent or otherwise; except in the event of negligence or willful misconduct of Landlord.

(b)  Tenant does hereby assume liability for and shall indemnify, protect, defend, save and hold harmless Landlord and its officers, agents and employees (except only to the extent of any negligence or willful misconduct of Landlord, its officers, directors, agents and employees which is not covered by insurance required to be carried by Tenant pursuant to this Leasel from and against all liability, judgments, claims, demands, suits, actions, losses, penalties, fines, damages, costs and expenses (including reasonable attorneys' fees) of any kind or nature whatsoever, due to or arising out of or from (i) any breach, violation, or non-performance of any covenant, condition, provision or agreement in this Lease set forth and contained on the part of Tenant to be fulfilled, kept, observed and performed, or (ii) the use or occupation of the Premises or any part thereof by Tenant or by any subtenant, assignee or any other party occupying any portion of the Premises under Tenant, or {iii} any injury to any person or persons, including death, occurring in or about the Premises, or {iv} any injury (including death) to any employee, agent, contractor or invitee of Tenant occurring in or about the Land or Building. Tenant's obligations under this Paragraph (b) shall survive the expiration or sooner termination of this Lease for three (3) years thereafter.

{c)  Landlord does hereby assume liability for, and does hereby agree to indemnify, protect, defend, save and hold hannless Tenant from and against any and all liabilities, obligations, claims, actions, demands, fines, suits, judgments, penalties,

damages and losses (including all of the costs, fees and expenses connected therewith or incident thereto) for death of or injury to any person whomsoever and for loss of, damage to, or destruction of any third party's property whatsoever (including loss of use thereon arising out of the negligent or intentional wrongful act or omission of Landlord as it relates to the ownership, management, maintenance and operation of the Land, Building and Premises. Landlord's obligations under this Paragraph (c) shall survive the expiration or sooner termination of this Lease for three (3) years thereafter.

### 19.   SURRENDER OF PREMISES:

Tenant shall deliver up and surrender possession of the Premises unto Landlord at the termination of this Lease, by expiration of the Term or otherwise, in as good condition as at the commencement of the term hereof normal wear and tear excepted. Normal wear and tear, for the purposes of this Lease, shall be construed to mean wear and tear caused to the Premises by a natural aging process which occurs in spite of prudent application of normal standards for maintenance, repair and janitorial practices. It is not intended, nor shall it be construed, to include items of neglected or deferred maintenance which would have or should have been attended to during the Lease term if normal standards had been applied to properly maintain and keep the Premises at all times in good condition and repair.

### 20.   HOLDING OVER:

In the event Tenant remains in possession of the Premises after the expiration or termination of this Lease with the consent of Landlord, it shall be deemed to be a tenant from month to month only, at the monthly rental rate of 150% of the monthly Base Rent in effect during the last month of the term expired and governed in all other things, except as to the duration of the term, by the provisions of this Lease. Either party may terminate such tenancy by giving to the other at least thirty (30) days prior written notice of its intent to terminate.

### 21.   INSPECTION OF PREMISES BY LANDLORD:

Tenant shall permit Landlord and its agents to enter the Premises at all reasonable times with reasonable prior written notice, except for emergencies in which case no notice shall be required, to inspect the same, to post Notices of Nonresponsibility and similar notices, to show the Premises to interested parties such as prospective lenders and buyers, to make necessary repairs, to discharge Tenant's obligations hereunder when Tenant has failed to do so within a reasonable time after written notice from Landlord, and, within one hundred and twenty (120) days prior to the expiration or earlier termination of the Lease term, to place upon the Premises, Building and/or the Land ordinary "For Lease" signs and to show the Premises to prospective tenants.

Exhibit 1 (CFBB 19985) Page 14 of 27
C926 and revisions one thousand and sweetie (120)'s prior the

### 22.   QUIET ENJOYMENT:

Landlord covenants and agrees that Tenant, so long as it shall not be in default hereunder, shall and may, at all times during the term of this Lease and any extension and renewal hereof, peacefully and quietly have, hold, occupy and enjoy the Premises upon and subject to the terms of this Lease, without any hinderance or molestation by Landlord or anyone claiming by, through or under Landlord.

### 23.   NOTICES:

All notices, requests, demands or other communications with respect to this Lease, whether or not herein expressly provided for, shall be in writing and shall be deemed to have been duly given the next business day after being deposited (in time for delivery by such service on such business day) with Federal Express or another national courier service, for delivery to the parties at their respective addresses as first above written. A copy of any notice sent to Landlord shall be sent to: G E Global Operations- Properties, l River Road, Schenectady, New York 12345, Attention: Power Property Counsel. A copy of any notice sent to Tenant shall be sent to: WattStock, Suite 1020, 4925 Greenville Avenue, Dallas, Texas 75206.

### 24. LIENS:

Tenant shall keep the Premises, Building and Land free from all liens arising out of any work performed, materials furnished or obligations incurred by or on behalf of Tenant and shall indemnify, defend and hold Landlord and its agents harmless from all claims, costs and liabilities, including reasonable attorneys' fees and costs, in connection with or arising out of any such lien or claim of lien. Tenant shall cause any such lien imposed to be released of record by payment or posting of a proper bond acceptable to Landlord within ten (10) days after written request by Landlord. Tenant shall give Landlord written notice of Tenant's intention to perform work on the Premises which might result in any claim of lien at least ten (10) days prior to the commencement of such work to enable Landlord to post and record a Notice of Nonresponsibility.

### 25. OPTION TO TERMINATE:

Either party shall have the option to terminate this Lease, without penalty, at any time after the initial twelve (12) months of the Term by providing the other party with notice of the termination not less than one hundred twenty (120) days prior to the expiration of each anniversary of the Lease Commencement Date.

### 26. COMPLIANCE WITH LAW:

Tenant, at Tenant's expense, shall comply with all laws, rules, orders, ordinances, directions, regulations and requirements of federal, state, county and municipal authorities pertaining to Tenant's use of the Premises and with the recorded covenants, conditions and restrictions, regardless of when they become effective, including, without limitation, the Americans with Disabilities Act and all applicable federal, state and local laws, regulations and ordinances pertaining to air and water quality, Hazardous Materials (as hereinafter defined), waste disposal, air emissions and other environmental matters, all zoning and other land use matters, and utility availability, and with any direction of any public officer or officers, pursuant to law, which shall impose any duty upon Landlord or Tenant with respect to the use or occupation of the Premises.

### 27. USE OF HAZARDOUS MATERIAL:

27.1. **Tenant Obligations.** Tenant shall (i) not cause or permit a n y Hazardous Material to be brought upon, kept or used in or about the Premises or the Site by Tenant, its agents, employees, contractors or invitees without the prior written consent of Landlord, which consent Landlord shall not unreasonably withhold as long as Tenant demonstrates to Landlord's reasonable satisfaction that such Hazardous Material is necessary or useful to Tenant's business and will be used, kept and stored in a manner

1

that complies with all laws regulating any such Hazardous Material so brought upon or used or kept in or about the Premises. If Tenant breaches the obligations stated in the preceding sentence, or if the presence of Hazardous Material on the Premises, Building or Land caused or permitted by Tenant, results in contamination of the Premises, Building or Land, or if contamination of the Premises, Building or Land by Hazardous Material otherwise occurs for which Tenant is legally liable to Landlord for damage resulting therefrom, then Tenant shall indemnify, defend and hold Landlord harmless from any and all claims, judgments, damages, penalties, fines, costs, liabilities or losses (including, without limitation, diminution in value of the Premises, Building and Land, damages for the loss of restriction on use of rentable or usable space or of any amenity of the Premises, Building and Land, damages arising from any adverse impact on marketing of space, and sums paid in settlement of claims, attorneys' fees, consultant fees and expert fees) which arise during or after the Tenn of this Lease as a result of such contamination. This indemnification of Landlord by Tenant includes, without limitation, costs incurred in connection with any investigation of site conditions or any clean-up, remedial, removal or restoration work required by any federal, state or local governmental agency or political subdivision because of Hazardous Material present in the soil or ground water on or under the Premises, Building or Land. Without limiting the foregoing, if the presence of any Hazardous Material on, under or about the Premises, Building or the Land caused or permitted by Tenant results in any contamination of the Premises, Building or the Land, Tenant shall promptly take all actions at its sole expense as are necessary to return the Premises, Building or the Land, as the case may be, to the condition existing prior to the introduction of any such Hazardous Material; provided that Landlord's approval of such actions shall first be obtained, which approval shall not be unreasonably withheld so long as such actions would not potentially have any material adverse long-term or short-term effect on the Premises, Building or the Land. The foregoing indemnity shall survive the expiration or earlier termination of this Lease.

27.2.   <u>Definition.</u>  As used herein, "Hazardous Material" means any material or substance or emission or any combination thereof, which is toxic, ignitable, reactive, or corrosive or which is regulated by "Environmental Laws" and which may (a) cause or significantly contribute to an increase in mortality or serious illness, or (b) pose the risk of a substantial present or potential hazard to human health, to the environment or otherwise to animal or plant life, and shall include without limitation hazardous substances and materials described in "Environmental Laws". Hazardous Material includes any and all material or substances which are defined as "hazardous waste", "extremely hazardous waste" or a "hazardous substance" pursuant to state, federal or local governmental law, such as without limitation, asbestos, polychlorinated biphenyls ("PCBs") and petroleum products. The term "Environmental Laws" means federal, state and local laws and regulations, judgments, orders and permits governing the protection of the environment, including without limitation the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601 <u>et seq.,</u> as amended (CERCLA), the Resource Conservation and Recovery Act, as amended 42 U.S.C. 6901 <u>et seq.,</u> the Clean Water Act, 33 U.S.C. 1251 <u>et seq.,</u> the Clean Air Act, 42 U.S.C. 7401 <u>et seq.,</u> the Toxic Substance Control Act, 15 U.S.C. 2601 <u>et seq.,</u> and the Safe Drinking Water Act, 42 U.S.C. 300f through 300j, and their State law equivalents.

27.3.   <u>Rules and Regulations.</u>   In addition to the requirements herein, Tenant shall comply with the Rules and Regulations attached hereto as EXHIBIT C.

27.4.   <u>Disclosure.</u>   At the commencement of this Lease, and on January 1 of each year thereafter (each such date being hereafter called "Disclosure Dates"), including

January 1 of the *year* after the termination of this Lease, Tenant shall disclose to Landlord the names and amounts of all Hazardous Materials, or any combination thereof, which were stored, used or disposed of on the Premises, or which Tenant intends to store, use or dispose of on the Premises.

27 .5. **Inspection.** Landlord and its agents shall have the right, but not the duty, to inspect the Premises at any time upon reasonable prior written notice to Tenant to determine whether Tenant is complying with the terms of this Paragraph 27. If Tenant is not in compliance with the provisions of this Paragraph 27, Landlord shall have the right to immediately enter upon the Premises to remedy any contamination caused by Tenant's failure to comply notwithstanding any other provision of this Lease. Landlord shall use its best efforts to minimize interference with Tenant's business but shall not be liable for any interference caused thereby.

27 .6 **Management of Change Process.** All product/process changes shall go through a management of change process to evaluate environmental, health and safety compliance. Landlord shall be included in all such management of change reviews.

27.7. **Default.** Any default under this Paragraph shall be a material default enabling Landlord to exercise any of the remedies set forth in this Lease.

28. **PERSONAL PROPERTY TAXES:**

Tenant shall pay prior to delinquency all taxes assessed or levied against Tenant's trade fixtures, furniture, equipment and other personal property in and about the Premises or elsewhere. When possible, Tenant shall cause such property to be billed separately from the real or personal property of Landlord.

29. **SECURITY DEPOSIT:**

Upon execution of this Lease, Tenant shall pay to Landlord the sum of Five Thousand Dollars ($5,000.00) as security for the full and faithful performance by Tenant of each and every term, covenant and condition of this Lease. In the event that Tenant is in default under this Lease, or fails to perform any of the terms, provisions and conditions of this Lease, Landlord may use, apply, or retain the whole or any part of the security so deposited for the payment of any sum due to Landlord or which Landlord may expend or be required to expend by reason of Tenant's default or failure to perform; provided, however, that any such use, application, or retention of all or part of the security deposit shall not be or be deemed to be an election of remedies by Landlord or viewed as liquidated damages. In the event that Tenant shall comply with all of the terms, covenants and conditions of this Lease, the security deposit shall be returned to Tenant within thirty (30) days after termination of this Lease and delivery of possession of the Premises to Landlord. Landlord shall not be required to hold the deposit in an interest-bearing account or to account for any accrued interest on the security deposit, if any.

30. **BROKER:**

Tenant represents and warrants that it has not dealt with any broker in this transaction.

31. **ESTOPPEL CERTIFICATE:**

At any time and from time to time, within ten (10) days after Landlord shall request the same, Tenant will execute, acknowledge and deliver to Landlord and to such other party as may be designated by Landlord, a certificate in a form acceptable to Landlord with respect to the matters required by such party and such other matters relating to this Lease or the status of performance of obligations of the parties hereunder as may be reasonably requested by Landlord. In the event that Tenant fails to provide such certificate within ten (10) days after request therefor by Landlord, Tenant shall be deemed to have approved the contents of any such certificate submitted to Tenant by Landlord and Landlord is hereby authorized to so certify.

32.  LIMITATION OF LIABILITY OF LANDLORD:

No owner of the Building, whether or not named herein, shall have liability hereunder after such party ceases to hold title to the Building, except for obligations which may have theretofore accrued. Neither Landlord nor any officer, director, shareholder, partner or principal, whether disclosed or undisclosed, of Landlord shall be under any personal liability with respect to any of the provisions of this Lease, and if Landlord is in breach or default with respect to Landlord's obligations or otherwise under this Lease, Tenant shall look solely to the equity of Landlord in the Premises, Building and Land for the satisfaction of Tenant's remedies. It is expressly understood and agreed that Landlord's liability under the terms, covenants, conditions, warranties and obligations of this Lease shall in no event exceed the loss of Landlord's equity interest in the Premises, Building and Land.

33.  MISCELLANEOUS:

33.1.  **Time Periods.** All periods of time referred to in this Lease shall include all Saturdays, Sundays and state and national holidays, unless the period of time specifies business days, provided that if the date or last date to perform any act or give notice or approval shall fall on a Saturday, Sunday or state or national holiday, such act, notice or approval shall be timely if performed or given on the next succeeding day which is not a Saturday, Sunday or state or national holiday.

33.2.  **Waiver.** The waiver by Landlord or Tenant of any breach of any term, condition or covenant of this Lease shall not be deemed to be a waiver of such provision or any subsequent breach of the same or any other term, condition or covenant of this Lease. No covenant, term or condition of this Lease shall be deemed to have been waived by Landlord or Tenant unless such waiver is in writing and signed by the waiving party.

33.3.  **Severability.** If any provisions of this Lease shall be held to be invalid, void or unenforceable, the remaining provisions hereof shall not be affected or impaired, and such remaining provisions shall remain in full force and effect.

33.4.  **Remedies Cumulative.** The rights and remedies given to Landlord or Tenant respectively in this Lease are distinct, separate and cumulative, and no one of them, whether or not exercised by Landlord or Tenant respectively, shall be deemed to be in exclusion of any of the others herein or by law or in equity provided.

33.5.  **Exhibits.** All exhibits referred to herein are attached hereto and incorporated by reference.

33.6.  <u>Executed Copy.</u>  Any fully executed copy of this Lease shall be deemed an original for all purposes.

33.7.  <u>Binding Effect.</u>  The covenants and agreements contained in this Lease shall be binding on the parties hereto and on their respective heirs, successors, representatives and permitted assigns.  Upon any sale or other transfer by Landlord of its interest in the Premises, Landlord shall be relieved of any obligations under this Lease occurring thereafter.

33.8.  <u>Joint and Several Liability.</u>  If two or more individuals, corporations, partnerships or other business associations (or any combination of two or more thereon shall sign this Lease as Tenant, the liability of each such individual, corporation, partnership or other business association to pay Rent and perform all other obligations hereunder shall be deemed to be joint and several, and all notices, payments and agreements given or made by, with or to any one of such individuals, corporations. partnerships or other business associations shall be deemed to have been given or made by, with or to all of them.  In like manner, if Tenant shall be a partnership or other business association, the members of which are, by virtue of statute or federal law, subject to personal liability, the liability of each such member shall be joint and several.

33.9.  <u>Intentionally Omitted.</u>

33.10.  <u>Applicable Law.</u>  This Lease and the rights and obligations of the parties hereunder shall be construed in accordance with the laws of the state in which the Premises are located.

33.11.  <u>Authority of Parties.</u>  Each party warrants that it is authorized to enter into this Lease, that the person signing on its behalf is duly authorized to execute this Lease, and that no other signatures are necessary.

33.12.  <u>Attorneys' Fees.</u>  If any action for breach of or to enforce the provisions of this Lease is commenced, the court in each action shall award to the party in whose favor a judgment is entered, the prevailing party's actual attorney's fees and costs.

33.13.  <u>Captions.</u>  The captions and headings used in this Lease are for the purpose of convenience only and shall not be construed to limit or extend the meaning of any part of this Lease.

33.14.  <u>Entire Agreement.</u>  This Lease and its Exhibits is the entire agreement between the parties and there are no agreements, understandings or representations between the parties except as expressed herein.  Except as otherwise provided herein, no subsequent change or addition to this Lease shall be binding unless in writing and signed by the parties hereto.

33.15.  <u>No Offer.</u>  The submission of this Lease for examination or the negotiation of the transaction described herein or the execution of this Lease by only one of the parties shall not in any way constitute an offer to lease on behalf of either Landlord or Tenant, and this Lease shall not be binding on either party until duplicate originals thereof, duly exercised on behalf of both parties, have been delivered to each of the parties hereto.

**SIGNATURES APPEAR ON THE NEXT PAGE.**

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Lease as of the day and year first above written.  Individuals signing on behalf of a principal warrant that they have the authority to bind said principal.

Signed, sealed and delivered
in the presence of:

_____

5/31/18

**LANDLORD:**

GE PACKAGED POWER LP

By: _Joseph Hart_

Title: _Executive – Fulfillment Operations Mgr_

Signed, sealed and delivered
in the presence of:

_____

25 MAY 2018

**TENANT:**

**WATTSTOCK, LLC**

By: _____

Title: _____

# EXHIBIT A

## Premises and Common Areas



Case 21-31488-sgj11    Doc 123-2    Filed 07/12/22    Entered 07/12/22 21:16:30    Desc
Exhibit 1 (CEPP Lease)    Page 22 of 27

OfficePre





# EXHIBITS

## Cranes to be maintained by Tenant during the Term

| ASSET NO. | SERIAL NO. | ASSET TAG | LOCATION | DESCRIPTION | VENDOR | MANUFACTURE |
|-----------|-----------|-----------|----------|-------------|--------|-------------|
| 2963 | P-9151-A | G-ACRANE-1 | BLDGG-01-2121 | Crane 50 Ton G-ACRANE-1 Bld. G | ProServ Crane Group | ProServ Crane Group |
| 2964 | P-9151-B | G-ACRANE-1 | BLDGG-01-2121 | Crane 50 Ton G-ACRANE-2 Bld. G | ProServ Crane Group | ProServ Crane Group |

## EXHIBIT C

## RULES AND REGULATIONS

1) The Common Facilities, the sidewalks, driveways, other tenant buildings, and other public portion of the Property shall not be obstructed or encumbered by Tenant nor will those common areas be used or occupied for any purpose other than ingress or egress to and from the tenants agreed upon Premises (Building G, area outside building G marked with paint, and Offices A2, 1st Floor), and Tenant shall not permit any of its employees, agents, licensees or invitees to enter, congregate, or loiter on, any of the Property other than Building G and Offices A2, 1st Floor. Tenant shall not invite to, or permit to visit the Premises, persons in such numbers or under such conditions as may interfere with the use by others of the Property. Landlord reserves the right to control and operate, and to restrict and regulate the use of, the Property and the public facilities. as well as facilities furnished for the common use of tenants, in such manner as it deems best for the benefit of tenants generally.

2) Premises is in as is condition.   G E Facilities department will complete any alterations and repairs at the expense of the tenant due and payable as Additional Rent within thirty (30) days of invoice. All repairs and request must go through the site Facilities ERP known as Maximo. All items will be reviewed by the site's Facility Manager for approval. Any damage done to the property or within the Premises will be repaired by the site's facilities group, or its vendors, and invoiced to the tenant upon completion.

3) No animals (except for service animals!, fish or birds of any kind shall be brought into, or kept in or about the Premises or Property.

4) Tenant shall not use the Premises within the security fence, or allow it to be used for standing vehicles, visitor vehicles, or employee vehicles.  Regardless of employee or visitor, all Tenant related vehicles must be tagged appropriately with G E approved parking lot tags and remain outside of the secured facility with exception of vehicles that are critical to the operation, such as delivery vehicles, mobile cranes, material handling equipment. etc., which will be allowed to be inside the agreed upon Premises by G E approval.

5) Tenant shall not place storage trailers or other storage containers of any type outside the Premises.

6) Tenant shall not park on a permanent or semi-permanent basis, any vehicle or trailer behind dock doors or in any other location outside the Premises for the purpose of storage.

7) Tenant shall not cause or permit any odors of processes. or any unusual or objectionable odors, to emanate from the Premises which would annoy other tenants or create a public or private nuisance.  Smoking and tobacco is not allowed on the Premises or on any G E property.

8) Plumbing facilities shall not be used for any purpose other than those for which they were constructed. No sweepings, rubbish, ashes, newspapers, objects or other substances of any kind shall be thrown into the plumbing facilities.

9) Tenant agrees to keep the Premises in a neat, good and sanitary condition and to place garbage, trash, rubbish and all other disposables only within the agreed upon Premises. All waste will be fully managed and paid for by the Tenant through a separate agreement with an approved GE vendor.

10) Landlord reserves the right to rescind, alter, waive or add, any rule or Regulation at any time prescribed for the building when, in the reasonable judgment of Landlord, Landlord deems it necessary or desirable for the reputation, safety, character, security, care, appearance or interests of the Property, or the preservation of good order therein, or the operation or maintenance of the Property, or the equipment thereof, or the comfort of tenants of others in the Property. No rescission, alteration, waiver or addition of any rule or regulation in respect of one tenant shall operate as a rescission, alteration or waiver in respect of any other tenant.

11) Landlord reserves the right to install additional security measures, at reasonable cost of the Tenant, such as locking devices, fencing, cameras, sensors, etc. to ensure all tenants safety and security in the event of a security breach or incident caused by the Tenant.

12) Tenant agrees to provide Landlord with information on air emissions including but not limited to welding, cutting and paint usage promptly upon request by Landlord.

13) Tenant shall not dispose of process wastewater to the on-site wastewater treatment plant. Only sanitary wastewater shall be disposed to the on-site wastewater treatment plant.

14) Tenant shall not store oil in any containers equal to or greater than 55 gallons.

15) Best management practices shall be used to prevent spills and releases of hazardous materials.

16) Tenant shall not block emergency exits.

17) Flammable materials shall be stored in flammable cabinets and propane cylinders shall be properly secured.

18) Non-compliance with any of the above rules and regulations may, in Landlord's sole judgment, result in a monetary fine not to exceed $100 per day. Landlord will notify Tenant of such violations and Tenant will have five (5) days to rectify, after which, daily fine will be applied, due and payable as Additional Rent within thirty (30) days of invoice.

**Exhibit D**
**Building G Outdoor Storage**

**18'6" X 202' or 3,757 square feet**

