1                   IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE NORTHERN DISTRICT OF TEXAS
2                            DALLAS DIVISION

3

4   IN RE:                      )   BK. NO:  21-31488-SGJ

5                               )

6   WATTSTOCK, LLC              )

7       D E B T O R.            )

8

9

10

11              *   *   *   *   *   *   *   *   *   *

12                  TRANSCRIPT OF PROCEEDINGS

13              *   *   *   *   *   *   *   *   *   *

14

15

16

17

18

19

20      BE IT REMEMBERED, that on the 31st day of May, 2022,

21  before the HONORABLE STACEY G. JERNIGAN, United States

22  Bankruptcy Judge at Dallas, Texas, the above styled and

23  numbered cause came on for hearing, and the following

24  constitutes the transcript of such proceedings as hereinafter

25  set forth:

1           P R O C E E D I N G S

2           THE COURT:  All right.  Our other 1:30 matter

3 is the WattStock case.  This is case number 21-31488, a

4 Subchapter V Chapter 11.  We have a plan set for

5 confirmation.  So I'll go ahead and get lawyer appearances on

6 that at this time.

7      Mr. Berghman, I see you out there.  Are you appearing

8 for WattStock today?

9           MR. BERGHMAN:  Your Honor, that's correct.

10 Thomas Berghman and An Nguyen from Munsch Hardt for the

11 debtor in possession.  And on the call also we have Andrew

12 Herr, who is the CEO of the debtor.

13           THE COURT:  All right.  And I did see the

14 declaration you all submitted in support of the plan of

15 Andrew Herr.

16      All right.  I'll next hear from other appearances.  Do

17 we have the Subchapter V Trustee on the Webex?

18           MR. SEIDEL:  Good afternoon, Your Honor.

19 Scott Seidel.  I'm the Sub V Trustee, if you can hear me,

20 Your Honor.

21           THE COURT:  I can.  Thank you.

22      All right.

23           MR. SEIDEL:  Thank you.

24           THE COURT:  I saw we had an objection that

25 Mr. Mercer filed on behalf of the client.  Mr. Mercer, are

1  you here to appear for that client?

2          MR. MERCER:  Yes, Your Honor.  Good afternoon.

3  Kell Mercer on behalf of the Pro-Per creditor.

4          THE COURT:  Okay.  Thank you.

5      Let's see, do we have any other lawyer appearances for

6  any parties?

7      We have one here in the courtroom?

8          MR. EASTLAKE:  Good afternoon, Your Honor.

9          THE COURT:  Oh, go ahead.  Who is that?

10          MR. EASTLAKE:  Good afternoon, Your Honor.

11  David Eastlake of Baker Botts on behalf of Alta Power, LLC.

12          THE COURT:  Okay.  I'm sorry.  I'm going to

13  have to ask you to repeat your appearance.  We didn't get it

14  here in the courtroom.

15          MR. EASTLAKE:  Of course, apologies.  David

16  Eastlake of Baker Botts on behalf of Alta Power, LLC.

17          THE COURT:  All right.  Thank you,

18  Mr. Eastlake.

19      All right.  Here in the courtroom?

20          MR. HEITZ:  Good afternoon, Your Honor.  Eric

21  Heitz with Gibson, Dunn & Crutcher on behalf of the GE

22  entities; that's GE Package Power and GE International, Inc.

23          THE COURT:  Okay.  Thank you, Mr. Heitz.

24      Anybody I missed?

25          MR. JUDD:  Yes, Your Honor.  Josh Judd with

1   Andrews Myers on behalf of Robert McNamee.

2           THE COURT:  All right.  Thank you, Mr. Judd.

3       Any other appearances?

4           MR. SOWELL:  Good morning, Your Honor.

5   Steffen Sowell with Winstead PC on behalf of Integrated

6   Engineers and Contractors Corporation.

7           THE COURT:  Okay.  Thank you, Mr. Sowell.

8       Anyone else?

9           THE COURT:  All right.  Well, Mr. Berghman, I

10  have my stack here of things you submitted.  I mentioned the

11  declaration of Mr. Herr.  You had a brief in support of plan

12  confirmation and you had some exhibits.

13      How do you want to proceed?

14          MR. BERGHMAN:  Your Honor, the plan we're

15  presenting today is both consensual and un-objected to, for

16  lack of a better term.  So I think the easiest way to get

17  through this is I -- for me to sort of just present the plan,

18  introduce our exhibits, and then -- a big reason the plan is

19  not objected to is because we reached a lot of accommodations

20  with creditors.  And I think it would make sense for me to

21  walk the Court through each one of those just briefly.  And I

22  think that may be the easiest way to get this done as

23  efficiently as possible.

24          THE COURT:  Okay.  Sounds good to me.

25          MR. BERGHMAN:  Okay.  Thank you, Your Honor.

1      So we're here today on confirmation of the debtor's

2   consensual Subchapter V plan.  And as I mentioned following

3   discussions with various constituencies, there's no

4   objections to the plan.

5      At its core, the plan is very, very simple.  The debtor

6   is reorganizing and continuing operations.  The plan

7   reinstates a modest SBA note and provides for three annual

8   payouts to unsecured creditors estimated at approximately 56

9   percent on the dollar for unsecured creditors.  It's just a

10   vanilla reorganization.

11      And although we've had very few hearings in this case,

12   and I we're not even up to docket entry 100 yet in this case,

13   Your Honor, I think, has gleaned some of the workings of this

14   debtor.  And to just briefly recap it for context.

15      This debtor's sources use mobile gas power plants.  It

16   contracts with customers all over the world for the purchase,

17   refurbishment, and reinstallation of those power plants.

18   Because of the pandemic, of course, WattStock personnel were

19   unable to travel and do that job.  Additionally, there were

20   some litigation filed in Houston where a state court judge

21   ordered a freeze on all of the debtor's assets, which

22   precipitated sort of an emergency filing.

23      It's the nature of this particular business, which is

24   obviously very neat and specialized that its work and cash

25   flow are highly concentrated.  In other words, the debtor may

1    locate a customer, potential power units to work on, but the

2    runway to document, finance, and start actually working on

3    those projects is generally measured in quarters or maybe

4    years, not weeks or months.  And so during the bankruptcy

5    case, and really since late last year, the debtor has been

6    working on, you know, securing projects to finance a

7    reorganization.

8        So the original plan we filed back in November had a

9    toggle.  It was either we were going to sell and liquidate,

10   in the event we were not able to sort of restart the pipeline

11   of projects, or it was to reorganize and go forward with the

12   business, in the event that we did get sufficient business

13   opportunities.  And fortunately, the latter alternative has

14   prevailed.  So in the Spring the debtor filed an amended plan

15   that provides for a reorganization and, therefore, a much

16   better return to unsecured creditors.  So that's the plan

17   that we're on -- that we're here on today.

18       We filed the plan on April 22nd and solicited it then,

19   as well.  Ultimately from the solicitation and from having

20   served it out on parties, we've got a plan that's consensual

21   and where there are no pending objections.  The objection

22   filed by Pro-Per by Mr. Mercer raised a number of grounds for

23   the plan that were, frankly, valid concerns.  But each one of

24   those has been resolved or mooted.  And I think maybe the

25   quickest way to go through that is I can briefly describe the

1    issue, how we resolved it, and then I can let Mr. Mercer

2    chime in and see if he's got agreement with that, or if he

3    disagrees with me.

4              THE COURT:  All right.

5              MR. BERGHMAN:  So there were four grounds of

6    objection.  First, Pro-Per filed a secured claim in the case.

7    And our confirmation order just clarifies just what kind of

8    treatment that gets.  It fell into the Class 4 bucket of

9    secured claims, which was sort of labeled, you know, other

10   secured claims.  It didn't give specific identification of

11   collateral.  It just said, generally for other secured

12   claims, here's what we propose to do.  So we've agreed in the

13   confirmation order on more specific language on exactly what

14   that means with respect to the Pro-Per claim.

15             The second basis of objection was that it should be a

16   three year -- a five year payback, not three years.  But due

17   to the consensual nature of the plan, that issue has been

18   muted.

19             Likewise with the third concern regarding the

20   submitting of projected disposal income to the Trustee, and

21   having the Trustee distribute the same.  Again, with the

22   consensual plan, those requirements fall away.

23             And then the last objection was regarding the lack of

24   remedies in the plan.  And as I'll describe later, this was a

25   concern raised by another creditor and so we have beefed up

1   that language in the confirmation order.  And so that

2   resolves that fourth basis of objection.  And I think that

3   fairly summarizes it, but I'll let Mr. Mercer chime in and

4   give comments.

5            THE COURT:  All right.  Before that, will you

6   repeat what you said for the fourth objection?  The fourth

7   objection was what in substance?

8            MR. BERGHMAN:  Lack of remedies in the plan,

9   for plan default for failing to make the annual payments.

10           THE COURT:  Oh, okay.  Lack of remedies, in

11   the event of default.  All right.  So you've got language,

12   you think, satisfactory on that objection.

13       All right.  Mr. Mercer, do you confirm that these four

14   objections have been resolved to your satisfaction?

15           MR. MERCER:  Yes, Your Honor.  Kell Mercer on

16   behalf of the Pro-Per creditors.

17       That's a good summary and our objections have been

18   resolved.  And I'll formally on the record withdraw the

19   objection so that it is not live.

20           THE COURT:  All right.  Thank you for that.

21       So what do you want to address next, Mr. Berghman?

22           MR. BERGHMAN:  Your Honor, I think to

23   (inaudible word due to audio cutting out) evidentiary issues,

24   we'd like to proceed with introducing Mr. Herr's declaration

25   into evidence.  We filed that earlier this morning.  I've

1   tried to have copies hand-delivered to the Court.  I hope

2   those made it.  If they didn't, it's at docket 92.  And it

3   covers all of the confirmation standards.  And so the debtor

4   would move for the admission of, I believe it's Exhibit E in

5   our witness and exhibit list.  But just to cover our basis,

6   the debtor would move for the admission of all of its

7   Exhibits A through E.  They're all docket items.  And the

8   debtor would move for the admission of those exhibits.

9           THE COURT:  All right.  Does anyone have any

10  objection to the admissions, first, of Exhibits A through E

11  that are on file.  I forget what docket entry you said.  It

12  was just filed today, I think, the complete set.

13          MR. BERGHMAN:  The declaration is at 92, but

14  the full -- the full compliment of exhibits is docket 93.

15  It's got all of the other exhibits attached to it.

16          THE COURT:  Okay.  Thank you.  So any

17  objection to the exhibits, first, at docket entry number 93?

18      All right.  Hearing no objection, those exhibits will

19  be admitted.  That's A through E.

20      Next with regard to the declaration of Mr. Herr.  It

21  looks very straightforward, as far as it being testimony to

22  support confirmation.  I will accept it at the direct

23  testimony of the debtor.  Again, this is at docket entry

24  number 92.  But I will ask, is there anyone who wishes to

25  cross-examine Mr. Herr?

1        All right.  Well, hearing no request, then the

2    declaration will stand as our testimony.

3        What next, Mr. Berghman?

4            MR. BERGHMAN:  Your Honor, I think the last

5    issue to cover is just the compromises in the confirmation

6    order, because there were a few of them.  And I just want to

7    give the Court context for what those are.  And I will try to

8    run through those quickly.  Some of them are a little more

9    involved than others, but I'll try to make it brief.

10           THE COURT:  All right.  You may proceed.

11           MR. BERGHMAN:  So if Your Honor has a copy of

12   the proposed confirmation order.  We filed it on Friday.  I

13   believe it is docket entry 91 is the notice of proposed

14   order.  But it was also attached to the brief that we had

15   couriered over on Friday.

16           THE COURT:  Okay.

17           MR. BERGHMAN:  So starting on page 12 of the

18   confirmation order, paragraph 9, the first compromise is with

19   Mr. McNamee, Mr. Judd's client.  Mr. McNamee is a former

20   employee who sued the debtor in Harris County where the

21   Court's TRO precipitated the emergency bankruptcy filing.

22   And although that lawsuit was scheduled on the SOFA and a

23   suggestion of bankruptcy was filed in the case, on the

24   petition date Mr. McNamee wasn't on the matrix until the plan

25   stage, and so didn't get notice of the bankruptcy filing.  At

1  the same time, Mr. McNamee did file a proof of claim in

2  January of this year, which was after the October bar date.

3  And accordingly, a couple of weeks ago Mr. McNamee moved to

4  deem that claim timely filed.  That motion is at docket 84.

5  And so this compromise essentially preserves all of the

6  issues in that motion to be litigated pursuant to the claims

7  objection procedure.  And it also provides that the debtor

8  isn't going to hold it against Mr. McNamee that he didn't

9  expedite it, or that we're considering it on a

10 post-confirmation basis.  It just essentially preserves the

11 issues to be litigated on a normal schedule.  And, also,

12 confirms that the confirmation of the plan doesn't disallow

13 the claim simply for having been filed after the bar date.

14            THE COURT:  All right.  I'll ask Mr. Judd just

15 real quick, anything you want to say about that description

16 of the compromises for your client?

17            MR. JUDD:  Your Honor, I would agree.  That

18 description is adequate.  Ultimately, the resolution just

19 makes the plan net neutral as to the parties' rights to the

20 ultimate resolution of whether it's timely and also ultimate

21 allowance.  So I agree.

22            THE COURT:  Okay.  Thank you.

23       Mr. Berghman, go ahead.

24            MR. BERGHMAN:  Sure.  And I'll say, I'm going

25 to do my best on these summarize.  If I summarize something

1   incorrectly, it's the language, obviously, in the order that

2   would control, which has been vetted.  So if I screw it up,

3   don't hold it against me.

4        Next, paragraph 10 on page 12.  This addresses an issue

5   raised by IEC, Mr. Sowell's client.  This is the plan remedy

6   language that I mentioned, which was also an issue raised by

7   Mr. Mercer's client.  The proposed language is fairly

8   standard for a Subchapter V.  It basically provides that upon

9   default any party can move the Court to modify the plan or to

10  dismiss or convert the case.  If there's a conversion to a

11  Chapter 7, then undistributed property of the estate will

12  revest in a Chapter 7 estate.  And upon notice of the

13  default, the debtor has the obligation to file on the docket

14  revised income projections and forecasts and some other

15  financial documents.  If a default remains uncured, then

16  unsecured creditor claims will start to accrue interest at 5

17  percent.  And so that resolved IEC's concern, as well as

18  addressing one of the basis in the Pro-Per objection that was

19  filed on the docket.

20              THE COURT:  Okay.  All right.  Any comment

21  about that?

22      Okay.  Continue.

23              MR. BERGHMAN:  Mr. Sowell, I'm sorry.  Did we

24  step on you?

25              MR. SOWELL:  No.  Sorry about that.

1        Your Honor, Steffen Sowell appearing on behalf of IEC.

2   I just wanted to say that that's an accurate summation of the

3   compromise we've reached.

4              THE COURT:  Okay.  Thank you.

5        All right.  Mr. Berghman, go ahead.

6              MR. BERGHMAN:  Sure.  Next is paragraph 11 on

7   page 13.  This sort of dovetails with the remedies language

8   in that it specifically identifies the dates on which

9   unsecured payments should go out.  So June 30th of each of

10  2023, '24, and '25.  The plan originally had more sort of

11  approximate dates for payment.  And we thought it would just

12  make sense to make those dates specific so that it's clear if

13  there is a default, i.e., if a payment doesn't happen on that

14  date, then at least we know we have a default instead of sort

15  of, you know, guessing, are we ten days past or are we not.

16  Which wasn't really necessarily a compromise with anybody

17  specifically.  We just thought that that was something that

18  needed to be cleaned up.

19             THE COURT:  Okay.  That's good.  Go ahead.

20             MR. BERGHMAN:  Next is paragraph 12.  This

21  language essentially provides that all of the litigation is

22  unaffected by the plan and that none of the injunctive relief

23  or other language in the plan affects the Alta litigation.

24  And the -- that nothing in the plan affects the claims

25  allowance process with respect to the Alta claim.  In other

1    words, the adversary is going to proceed unaffected as to the

2    liquidation of Alta's claim against the -- against the debtor

3    or GE.

4            THE COURT:  Okay.  Makes sense.

5        Continue.

6            MR. BERGHMAN:  Mr. Eastlake is on the call.  I

7    don't know if he wants to chime in.

8            MR. EASTLAKE:  Briefly, Your Honor.  David

9    Eastlake on behalf of Alta Power, LLC.

10       That's correct.  Paragraph 12 -- and I'm sure

11   Mr. Berghman will get to it next, paragraph 13 resolves our

12   informal comments.  One other thing I would add to the

13   summary is just the debtor in the plan had a sentence or two

14   laying out a claim objection to Alta Power's pending proof of

15   claim.  We didn't think that was procedurally proper.  But we

16   also recognize that there's a pending adversary proceeding.

17   And so paragraph 12 just makes clear that that claim

18   objection that the debtors have lodged gets consolidated into

19   and determined in the adversary proceeding.

20           THE COURT:  All right.  That makes sense.

21       Mr. Berghman, go ahead.

22           MR. BERGHMAN:  Yeah, that's correct.  And --

23   yes, Your Honor, that is correct.  Mr. Eastlake is right to

24   point that out.  And he's also right to point out that the

25   next paragraph also addresses -- really was added at Alta's

1  request, but it may become relevant to other creditors,

2  essentially just a disputed claims reserve concept.  Under

3  this new provision to the plan, the debtor has to reserve

4  from each annual unsecured payout sufficient funds to account

5  for claims that are, you know, at that time still being

6  disputed.  And it provides for a procedure by which a party

7  can move to estimate, you know, what that withholding should

8  be, or really what the claim should be and, therefore, what

9  its impact would be on the creditor pool and the pro rata

10 distribution.  So it provides for motion practice to do that.

11      The first distribution is in June of 2023.  We're

12 hoping this never comes into play because everything will be

13 resolved.  But out of an abundance of caution, we thought it

14 prudent to build in that concept, as well.

15                  THE COURT:  Okay.  Got it.

16                  MR. BERGHMAN:  Next is paragraph 14 on page

17 15.  This is upon request of the TWC.  They filed a proof of

18 claim which they say is an administrative claim for alleged

19 unpaid unemployment contributions.

20      You know, to be honest, Your Honor, this is -- rather

21 than objecting to this claim and incurring fees, we are

22 accommodating their language because of the small number.

23 That's really all there is to it.  Just the cost and expense

24 of going through it would cost more than accommodating the

25 claim.  So it's just an economical decision.  There's, you

1  know, it's just a way to knock that one out, so to speak.

2                THE COURT:  Okay.

3                MR. BERGHMAN:  I'm not sure anybody from the

4  TWC is on the call.  But that's the -- that's what we're

5  doing there.

6                THE COURT:  Okay.  Got it.

7                MR. BERGHMAN:  The next is paragraph, I

8  believe it's 15.  This addresses Pro-Per's second argument

9  that I had identified earlier, namely regarding the treatment

10 of their secured claim in Class 4.  It's basically just

11 language providing that, you know, if there's an allowed

12 claim at the end of the day it -- you know, it gets treated

13 as provided in that provision.  Essentially the turnover of

14 their collateral, which is cash.  So we're just sort of

15 cleaning up what otherwise is the generic Class 4, other

16 secured claims, treatment provision of the plan.

17               THE COURT:  Okay.  Got it.

18               MR. BERGHMAN:  All right.  Okay.  Paragraph 16

19 is next.  This is a creditor called Frontier Tubular

20 Solutions.  They have stored the debtor's inventory for some

21 time, including pre-petition.  The language in the

22 confirmation order slightly modifies the amount of their

23 unsecured claim upwards by $700.  And it also allows an

24 administrative claim for storage during the bankruptcy case.

25 And to manage the storage issue on a go-forward basis, which

1   we believe will be short, but to manage it.  It provides for

2   the debtor's entry into what is a very standard sort of

3   storage agreement.  And I'm not sure anyone is on the call

4   from Frontier.  But this is Frontier's counsel's language

5   that we've just incorporated into the plan --

6                THE COURT:  Okay.

7                MR. BERGHMAN:  -- or into the order.

8                THE COURT:  All right.  Makes sense.

9        Anyone there for Frontier Tubular?

10       All right.  Continue.

11               MR. BERGHMAN:  All right.  Next is paragraph

12  17 on page 16.  There's two subsections there.  The first

13  assumes the real property lease between GE Package Power for

14  the warehouse space where the debtor operates.  It assumes it

15  on a month-to-month basis.  It provides for the waiver of

16  pre-petition rent while preserving the ability of GE to file

17  an administrative claim for rent accrued during the

18  bankruptcy case.  And the second subsection assumes the terms

19  and conditions by and between GE Package Power in relation to

20  past projects in order to permit the parties to address any

21  issues that may arise with past customers.  And it addresses

22  some related indemnity concerns.  It also liquidates GE's

23  pre-petition claim against the debtor under those terms and

24  conditions.

25               And I believe Mr. Heitz is in the courtroom, if he

1  wishes to comment.

2          THE COURT:  All right.  Mr. Heitz, what say

3  you?  Is this agreeable language to you?

4          MR. HEITZ:  Yes, Your Honor.  We perfectly

5  agree on the language.

6          THE COURT:  Okay.  All right.  He agrees.

7  Continue.

8          MR. BERGHMAN:  Okay.  And then last, but not

9  least, paragraph 18 on page 17, which just provides a payment

10  mechanism for the Subchapter V Trustee's fees within 30 days

11  of allowance.  And I believe there probably will be an

12  application filed.  I've seen it done different ways.  But it

13  provides for payment 30 days after allowance, which was not

14  anything we negotiated.  It's actually just a holdover from

15  what I had in a prior version of an order.  And then those

16  are the only sort of, you know, constituency specific

17  additions to the confirmation order.  And I do believe that

18  that resolves any and all sort of objections, formal or

19  informal, to the plan.

20          THE COURT:  All right.  Well, I'll turn to

21  you, Mr. Seidel, not just about paragraph 18, but do you have

22  any comments about the plan at all?

23          MR. SEIDEL:  No, Your Honor.  I would just

24  applaud the parties and counsel for helping to put aside the

25  contentiousness of the case on arrival and working together

1  to get to this point.  Other than that, I don't have

2  anything, Your Honor.

3          THE COURT:  Okay.  Thank you for that.

4      Any other comments, good, bad, or neutral, any lawyer

5  wants to put on the record at this point?

6      All right.  Well, when lawyers work together like this

7  and work things out, it sure makes my job easy.  And so this

8  is an example of that.  I didn't know if we were going to

9  have a highly contentious confirmation hearing a few days

10  ago, or if things would be worked out this way.  So I'm glad

11  that -- I know not everything is not worked out in the case,

12  certainly, but I'm glad you were at least able to work things

13  out to get a plan confirmed.

14      So with this evidence, again, the exhibits, the proffer

15  of Mr. Herr, and all of these announcements, the Court is

16  going to confirm this plan as modified.  First, I'll find

17  that notice and the solicitation process have been and always

18  proper.  We had only the one objection that was resolved, as

19  announced here today.  The objection of Pro-Per was resolved

20  by different language adjustments, shall we say, that were

21  presented.  So there are no pending objections to the plan at

22  this point.

23      Based on that and based on the ballot tally that was

24  also part of the evidence, I find that this is a consensual

25  plan.  And, therefore, there's no need to have the Subchapter

1    Trustee, Subchapter V Trustee act as Disbursing Agent, since

2    we have a consensual plan.

3         I find that the plan meets all the applicable

4    requirements of the applicable Bankruptcy Code provisions,

5    1122, 1123, 1129, and 1189 through 91.  And, again, it is the

6    plan as modified that the Court is approving.  I find there's

7    no need for any further notice or solicitation of creditors

8    as a result of these modifications, because the modifications

9    do not seem to impair the rights of any party that has not

10   accepted them in writing.  So the form of confirmation order

11   looks good to me.  And with this, again, I hereby confirm the

12   plan and reserve the right to supplement as may be necessary

13   in a written order.

14        Mr. Berghman, you'll submit your order.  And is there

15   anything else in the way of housekeeping matters?

16             MR. BERGHMAN:  Your Honor, I will submit the

17   order.  And I don't think there's any other housekeeping

18   matters.  And I just want to thank the Court and all of the

19   counsel on the call for working to get this resolved.  It's

20   been a -- it's actually been a pleasure.

21             THE COURT:  Thank you.

22   We stand adjourned.

23             (End of Proceedings.)

24

25

1              C E R T I F I C A T E

2              I, CINDY SUMNER, do hereby certify that the

3    foregoing constitutes a full, true, and complete

4    transcription of the proceedings as heretofore set forth in

5    the above-captioned and numbered cause in typewriting before

6    me.

7

8

9

10

11

12

13

14                              /s/Cindy Sumner

15                              _____

16                              CINDY SUMNER, CSR #5832
                                Expires 10-31-2024
17                              Cindy Sumner, CSR
                                5001 Vineyard Lane
18                              McKinney, Texas 75070
                                214 802-7196
19

20

21

22

23

24

25